UNITED STATES of America,
Plaintiff–Appellee,

v.

SALEM CARPET MILLS, INC., a corporation, and Jack J. Ware, Vice President, individually and as an officer of Salem Carpet Mills, Inc., Defendants–Appellants.

No. 79–2106.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1980.

Richard H. Gimer, Washington, D. C., for defendants–appellants.

Robert B. Nicholson, Andrea Limmer, Dept. of Justice, Washington, D. C., for plaintiff–appellee.

Before RONEY, HILL and FAY, Circuit Judges.

JAMES C. HILL, Circuit Judge.

Appellants Salem Carpet Mills, Inc. and Jack J. Ware, its vice president for manufacturing [referred to jointly as Salem], argue that the district court improperly enjoined the *export* of carpet alleged by the Consumer Product Safety Commission [Commission] [1] to violate the standards of the Flammable Fabrics Act, 15 U.S.C.A. §§ 1191 to 1204 (1976 & Supp.Pam.1979). Agreeing with Salem and finding applicable the export exemption contained in 15 U.S. C.A. § 1202(a) (Supp.Pam.1979), we reverse and remand the case to the district court with instructions to vacate the injunction.

## I. *Facts*

Salem Carpet Mills, Inc. manufactures carpet for both domestic and foreign sale. While Salem is in the practice of testing all of its products for compliance with regulations promulgated under the Flammable Fabrics Act, the Commission staff obtained negative results on tests of two of Salem's carpet styles, "Whimsy" and "Spree," which were sold on the domestic market. When the Commission staff so informed Salem, it immediately stopped all production and distribution of those styles. Salem then sought a lawful means to distribute the allegedly noncomplying carpet to avoid tying up approximately $1 million of inventory through the pendency of administrative

---

1. The Commission is charged with administering the Act. *See* 15 U.S.C. § 2079(b) (1976).

proceedings likely to last for several years.[2] Relying on the export exemption in the Act, Salem marked the carpet for export, located a purchaser in the United Kingdom, and informed the purchaser that the carpet for sale was the subject of Commission doubts that would prevent the purchaser from re-shipping the product into the United States.

## II. *Procedural History*

When informed of Salem's export intentions, the Commission threatened seizure of the product claiming that even export would violate the Act. Attempting to establish the applicability of the export exemption, Salem sued in district court for declaratory and injunctive relief. Shortly thereafter, the Commission filed this suit for a temporary injunction under 15 U.S.C. § 1195(a) (1976) to prevent Salem's planned export of the product. The two actions were considered together as they involve a common issue: the applicability of the export exemption.

At a hearing held on September 22, 1978, Salem's vice–president of manufacturing, appellant Ware, testified that the product in question, when manufactured, was not earmarked for either the domestic or export market. The decision to export was a business decision made in the absence of any feasible alternative. The Commission produced no witnesses at the hearing but rested on its allegation of failing test results and its policy[3] against the export of goods that do not comply with the Act unless the intent to export existed at the time of manufacture.

The district court, resting its jurisdiction on 15 U.S.C. § 1195(a) & 28 U.S.C. § 1345 (1976), enjoined "the sale, offering for sale, introduction and delivery for introduction and transportation in commerce (including exportation) ... of the carpet styles denominated 'Whimsy' and 'Spree' ..." until the rendering of a final administrative and/or judicial determination. Because the injunction prevented any disposition of the product, Salem moved for an alteration of the order, pointing out to the district court that there are several legal methods of disposing of even noncomplying carpet. This motion was denied.

## III. *The Decision*

At issue in this case is the applicability of a clearly expressed statutory exemption contained in the Flammable Fabrics Act. The exemption, which has fallen into administrative disrepute, provides that the Act

shall not apply to any fabric, related material, or product which is to be exported from the United States, if such fabric, related material, or product, and any container in which it is enclosed bears a stamp or label stating that [it] ... is intended for export and [it] ... is in fact exported from the United States; unless the Consumer Product Safety Commission ... determines that exportation of such fabric, related material, or product presents an unreasonable risk of injury to persons residing within the United States; except that this [Act] ... shall apply to any fabric, related material, or product manufactured for sale, offered for sale, or intended for shipment to any installation of the United States located outside of the United States.

15 U.S.C.A. § 1202(a) (Supp.Pam.1979). The Commission chooses to characterize

---

2. Salem has strongly contested the staff findings in an administrative complaint proceeding initiated by the Commission shortly after the injunction complaint was filed. These proceedings are still pending.

3. This policy appears in 16 C.F.R. § 1602.2(e) (1979) and states:
(e) The Consumer Product Safety Commission ... explicitly interprets section 15 of the act as exempting non-conforming goods for exportation only when the manufacturer or importer intends at the time of original manufacture or importation that such goods are to be exported from the United States, to other than an installation of the United States located outside the United States, and manifests that intent by marking such goods for export and proceeds to export them. The Commission so much as concedes that this language only represents its administrative policy and that it does not even have the force of a regulation since it was not promulgated in accordance with the Administrative Procedures Act.

§ 1202(a) as a "narrow exemption," "from a statute whose purpose is remedial." Accordingly, it reads into the statute a requirement that the product originally be intended for export for that product to come within the export exception. Curiously, the draft of the U.S. Senate bill, which was dropped in favor of the House version, was reported out of committee with language that arguably *would* support the Commission's present reading. That draft stated that the Act will not apply to "any fabric, related material, or product *intended solely for export* and so labeled or tagged." S. 1003, *quoted in* [*Proposed*] *Flammable Fabrics Act Amendments of 1967*, S.Rep. No. 407, 90th Cong., 1st Sess. 16 (1967) (emphasis added). This language, however, did not appear in the ultimately enacted exemption, which expressly extended "to any fabric, related material, or product *which is to be exported* from the United States...." 15 U.S.C. § 1202 (1976) (emphasis added). The quoted language survived the 1978 amendatory action as well. *See* 15 U.S.C.A. § 1202 (Supp.Pam.1979). In fact, in the course of that recent legislative action, the House Committee on Interstate and Foreign Commerce set out its understanding of the present state of export exemption law:

> Presently, the Act does not apply to any consumer product if: (1) it can be shown that such product is manufactured, sold or *held for sale or export*, unless such product is in fact distributed in commerce for use in the United States; and (2) such consumer product, or its container, when distributed bears a label or stamp stating that such product is intended for export.

H.R.Rep. No. 95–1164, 95th Cong., 2d Sess. 12, *reprinted in* [1978] U.S.Code Cong. & Ad.News, pp. 9434, 9441 (emphasis added). There is, to summarize our consideration of the legislative history, no support for the Commission's policy of applying the export exemption only when the manufacturer intended to export the product from the time of manufacture.[4] In fact, by declining to enact the Senate version of the bill, the Congress has suggested that it intended the opposite. That apparent intent coupled with the plain meaning of the exemption leads us to reject the Commission's arguments and export exemption policy and to reverse and remand the district court's decision with instructions to vacate the injunction.

REVERSED and REMANDED.

---

4. The Commission has argued that Salem's reading of the exemption "would significantly impede achievement of the Act's principal purpose of protecting the American public against the risk of death and injury from flammable products. It would do so by creating a serious disincentive to comply with flammability standards." Brief of Appellee at 10. The suggestion here is that manufacturers will disregard quality control regulations knowing that if caught they can export their product with impunity. While we doubt that manufacturers will cavalierly run the risk of forced exportation of huge quantities of their product ostensibly at lower prices, if they do, it is a matter for Congressional not judicial action–in light of the plain meaning of the exemption. We further note what appears to us to be a tension between the administrative approach to the Act, which has punitive manifestions, and the statutory language itself, which suggests a protective view toward enforcement. The Commission should, on this point as well, take its case to the Congress.